IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01174-PAB

STEVEN MARK ST. JAMES,

    Applicant,

v.

ARISTEDES W. ZAVARAS, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

    Respondents.

---

ORDER

---

PHILIP A. BRIMMER, District Judge.

    This matter is before the Court on Petitioner Steven Mark St. James' pro se Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 2] ("the Petition"). The only claim remaining is Petitioner's fourth claim asserting that certain evidentiary rulings by the state trial court were unduly prejudicial and deprived him of a fair trial. Respondents have filed an Answer [Docket No. 26] to claim four of the Petition. The Petitioner did not file a Traverse. After reviewing the Petition, the Answer and the state court record,[1] the Court concludes that claim four of the Petition should be denied.

**I.  Background**

    On May 29, 1998, Petitioner was convicted by a jury of sexual exploitation of a

---

[1] The state court record in Arapahoe District Court Case No. 97CR03425 consists of three volumes of state court pleadings, the original exhibits and jury instructions in separate sealed envelopes, and one CD-ROM that contains the hearing and trial transcripts. For ease of reference, the hearing and trial transcripts will be cited in this Order as "Hearing Tr." and "Trial Tr.," preceded by the applicable date.

child and sexual assault on a child by one in a position of trust in the District Court for Arapahoe County, Colorado ("the trial court").  State Court R., May 29, 1998 Hearing Tr., at 3.  The factual basis for the charges and convictions was accurately summarized by the Colorado Court of Appeals as follows:

> The convictions here arose out of the relationship between defendant and his seventeen-year-old adoptive niece.  According to the niece, on one occasion he had sexual contact with her; on another occasion, he photographed her bare breasts after telling her that he "knew people from Playboy" magazine.  The undeveloped film was found in storage among defendant's boxes and developed by the mother of defendant's sons.

*People v. St. James*, 75 P.3d 1122, 1123-24 (Colo. Ct. App. 2002), Answer Ex. D at 1.

On September 10, 1999, the trial court imposed a twenty-four year prison sentence for the sexual exploitation of a child conviction and a consecutive twelve year sentence for the sexual assault conviction.  State Court R. vol. 1, at 233.  The Colorado Court of Appeals affirmed Petitioner's convictions on direct appeal.  *People v. St. James*, 75 P.3d 1122 (Colo. App. 2002), Answer Ex. D.  On August 25, 2003, the Colorado Supreme Court denied Petitioner's request for certiorari review.  Answer Ex. F.

Petitioner asserted four claims in his original Application.  Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  After receiving a pre-answer response from the Respondents [Docket No. 10] and a premature reply from Petitioner [Docket No. 7], Magistrate Judge Boland determined that only claim four was exhausted.  Magistrate Boland therefore ordered Petitioner to show cause why the application should not be

dismissed as a mixed petition pursuant to *Rose v. Lundy*, 455 U.S. 509, 522 (1982), and *Harris v. Champion*, 48 F.3d 1127, 1133 (10th Cir. 1995).  When Petitioner's response to the order to show cause failed to clarify the matter, Magistrate Judge Boland ordered Petitioner to file an Amended Application.  In his Amended Application [Docket No. 14], Petitioner agreed to dismiss claims one, two and three, but added claims five and six.

On December 4, 2009, Magistrate Judge Boland ordered Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies with respect to claims five and six.  Petitioner filed a reply [Docket No. 16] before Respondents filed their pre-answer response [Docket No. 20].  Respondents argued that claims five and six were untimely because they did not relate back to the claims asserted in the original Application.  The Court agreed that claim six was untimely and dismissed that claim in an order dated February 23, 2010.  Respondents further contended that claim five was procedurally defaulted because Petitioner failed to exhaust the claim as a federal constitutional issue in the state courts.  The Court determined that Respondents were correct and dismissed claim five as procedurally barred from federal habeas review.  *See* February 23, 2010 Order to Dismiss in Part. Claim four, as set forth in the original Application, was drawn to a District Judge and to a Magistrate Judge.  *Id.*  The Court reviews the merits of claim four below.  All other claims raised by Petitioner have been dismissed.

II.     **Standard of Review**

The Court must construe the Petition and other papers filed by Petitioner liberally

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  However, the Court should not be an advocate for a pro se litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.  Furthermore, clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.  *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal

law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

A state court decision is contrary to clearly established federal law if: (a) the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'"; or (b) "'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.  *House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

Finally, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999); *see also Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (reconfirming "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits.").

### III.   Merits of Claim Four

Petitioner asserts in his fourth claim that he was prejudiced at trial when the court allowed the prosecution to introduce evidence that suggested his prior misconduct. The evidence included testimony by the niece that Petitioner possessed large amounts of cash and that he solicited her to sell drugs on his behalf. State Court R., May 27, 1998 Trial Tr., at 24, 39-40. In addition, the prosecution introduced

evidence of tracking records maintained by the Petitioner's community corrections facility. *Id.* at 74-79. Petitioner argues that the tracking records raised an inference that he had a criminal history and was transitioning from prison through a halfway house at the time of trial. Petition at 6.5. Petitioner asserted in the state appellate court that the trial court's evidentiary rulings violated his federal constitutional right to confront and cross examine the witnesses against him, and his right to a fair trial in accordance with due process of law. Answer Appendix B at 14.

The United States Supreme Court has never held that the admission of prior acts evidence violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (declining to hold that prior injury evidence violates due process); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (rejecting argument that due process requires exclusion of prejudicial evidence, e.g., prior convictions). As a general matter, state court determinations on state law questions are not subject to review in a federal habeas proceeding. *See Estelle*, 502 U.S. at 67-68. Absent a showing that the admission of evidence violated a specific constitutional right, a federal habeas court will not disturb the state court's evidentiary rulings "unless the [petitioner] demonstrates that the court's error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (internal quotation marks omitted); *see also Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).

Petitioner has not shown that the admission of the asserted other bad acts evidence violated a specific constitutional right. Petitioner made a conclusory assertion

in his opening brief on direct appeal in the state appellate court that his Sixth Amendment confrontation rights were infringed. Answer, Appendix B at 14. However, he did not develop the argument, the state court did not address it and this Court does not discern a Sixth Amendment violation. Petitioner's counsel had an opportunity to cross examine the niece concerning Petitioner's possession of large amounts of cash and his solicitation of her to sell drugs as that conduct related to the charges in the case. The purpose of the evidence was not to show other independent illegal activity by the Petitioner. The community corrections facility witness who testified about the tracking records was also subject to cross examination on the issue of Petitioner's whereabouts at specific dates and times. Again, the purpose of the evidence was not to show Petitioner's other crimes. Petitioner has therefore not demonstrated that he was denied his constitutional right of confrontation. Accordingly, to succeed on the fourth claim in his Application, Petitioner must establish that any error in the trial court's admission of the evidence was "so grossly prejudicial that it fatally infected his trial and denied the fundamental fairness that is the essence of due process." *Fox*, 200 F.3d at 1286. "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).

    **A.**  ***Possession of Large Amounts of Money and Drug Dealing Activities***

  Before trial, Petitioner filed motions in limine under Colo. R. Evid. 404(b) to exclude testimony that he possessed large amounts of cash and solicited his niece to

sell drugs on his behalf. State Court R., Vol. 1, at 126-29; *id.*, May 26, 1998 Hearing Tr. at 7-9. The trial court denied the motions, finding that the evidence was relevant to the circumstances of the charges offenses. *Id.*, May 26, 1998 Hearing Tr., at 10.

The Colorado Court of Appeals resolved Petitioner's claim as follows:

> Defendant contends that . . . the trial court erred in . . . permit[ing] the prosecution to elicit evidence that defendant possessed large amounts of money and the niece dealt drugs on his behalf . . . . We conclude that reversal is not required.
>
> The evidence of defendant's possession of money and the niece's drug dealing was admissible as res gestae evidence to provide the jury with a full understanding of the events surrounding the crimes and the context in which the crimes occurred. See generally People v. Quintana, 882 P.2d 1366, 1373 (Colo. 1994). The evidence was relevant and admissible to show aspects of the relationship demonstrating defendant's influence over his niece, her desire to please him, and, ultimately, the power defendant had in this relationship.

*St. James*, 75 P.3d at 1124-25.

In *People v. Quintana*, 882 P.2d 1366, 1373 (Colo. 1994), the Colorado Supreme Court held that "[e]vidence of other offenses or acts . . . that [are] part of the criminal episode or transaction with which the defendant is charged, [are] admissible to provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." The state courts' findings that the niece's testimony concerning Petitioner's possession of large amounts of cash and his solicitation of her to sell drugs was *res gestae* evidence of the charged offense are findings of fact that are accorded a presumption of correctness on federal

9

habeas review. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted those findings with clear and convincing evidence. *Id.*

The state court's determination that the evidence was admissible and hence, not grossly prejudicial, is not contrary to, or an unreasonable application of Supreme Court law, nor is it an unreasonable determination of the facts in light of the evidence presented to the trial court. The Court therefore finds that the trial court's admission of the challenged evidence did not render Petitioner's trial fundamentally unfair in violation of due process. *See, e.g., Willingham v. Mullin*, 296 F.3d 917, 928-29 (10th Cir. 2002) (according deference to state court's admission of objectionable photographs as relevant, despite habeas petitioner's argument that photographs were unduly prejudicial and concluding that petitioner failed to demonstrate a due process violation). Petitioner is not entitled to federal habeas relief on his claim.

**B.**    ***Community Corrections Tracking Records***

Before trial, Petitioner also filed a motion in limine to exclude evidence of the tracking records under Colo. R. Evid. 404(b) as evidence of prior criminal history. State Court R., Vol. 1, at 130-31. Petitioner offered to stipulate to the relevant information contained in the records. State Court R., May 26, 1998 Hearing Tr. at 11. The trial court ruled that the prosecution could introduce the evidence to corroborate the niece's testimony about her and Petitioner's activities, as long as the witness did not refer to Petitioner being in a custodial situation, the facility was referred to as a "residential center," and the records were not admitted into evidence. *Id.* at 10-12.

At trial, a prosecution witness testified that he met the Petitioner at a "residential placement," that the residents were required to participate in a program where they "earn certain privileges and they gain certain freedoms to go out in the community," and that the residents keep a log of their whereabouts when they are out in the community. State Court R., May 27, 1998 Trial Tr., at 75-76. The prosecution then elicited testimony from the witness regarding Petitioner's whereabouts between May and December 1996 to corroborate the niece's testimony about the places she and the Petitioner frequented together. *Id.* at 76-78.

The Colorado Court of Appeals resolved Petitioner's claim as follows:

> Defendant contends that, . . . the trial court erred in . . . permit[ing] the prosecution to introduce evidence of the tracking records kept by defendant's community corrections facility. We conclude that reversal is not required.
> . . . .
> The tracking records evidence was admitted to corroborate the niece's testimony that defendant was with her at certain times and places. Although defendant offered to stipulate to these facts, the trial court nonetheless permitted the prosecution to elicit the tracking records evidence, ordering it, however, not to elicit evidence raising "the inference that [defendant was] actually in custody."
>
> The prosecution elicited testimony that the records were kept by a "residential placement" program in which residents "earn certain privileges and . . . gain certain freedoms to go out into the community." Defendant did not contemporaneously object to this testimony. Subsequently, however, he requested a mistrial, arguing that the evidence violated the court's order to avoid an inference of custody. The trial court summarily denied defendant's motion, and defendant did not thereafter seek a curative instruction.

*St. James*, 75 P.3d at 1124-25.

The state appellate court then rejected the Petitioner's contention that the trial court erred in denying his motion for a mistral, finding that Petitioner was not prejudiced by the evidence concerning his involvement in a residential placement program. *Id.* at 1125-26.

Even if the trial court erred in rejecting Petitioner's offer to stipulate to the information contained in the tracking records and in allowing a prosecution witness to testify about the records, the Court finds that there is no reasonable probability that the evidence "tipped the scales" toward a guilty verdict so as to render Petitioner's trial fundamentally unfair.

The Court has carefully reviewed the state trial court record. The victim's testimony about her interactions with Petitioner was unrefuted and was corroborated by the photographic evidence and the tracking records from Petitioner's community corrections facility. The defense did not attack the victim's credibility at trial. Instead, the defense targeted a specific element of each charged offense. With regard to the charge of sexual exploitation of a child, the defense argued in closing that the prosecution failed to prove that Petitioner made any "sexually exploitative material,"[2] because Petitioner's former lover was the individual who discovered an undeveloped roll of film in a box of Petitioner's belongings and developed the film into photographs. State Court R., May 27, 1998 Trial Tr., 100-104. However, the evidence was undisputed that Petitioner took pictures of the niece's bare breasts at a place he referred to as his "office," that the photographs developed by Petitioner's former lover

---

[2] State Court R., May 28, 1998 Trial Tr., at 28-31; Jury Instructions, 12, 2-12.

were seized as evidence by the investigating detective in a search of the former lover's home, and that the photographs of the niece were admitted as evidence in support of the charge of sexual exploitation of a child at Petitioner's trial. *Id.* at 28-32, 113, 143-144, 152-54, 162.  This evidence weighed overwhelmingly against the Petitioner at trial. Accordingly, even if the tracking records suggested to the jury that Petitioner was in custody, any such inference would not have impacted the jury's verdict on the charge of sexual exploitation of a child.

For the charge of sexual assault on a child by one in a position of trust, the defense theory at trial was that Petitioner was not in a "position of trust" with regard to the victim.  State Court R., May 28, 1998 Trial Tr., at 15-26.  The evidence was that the seventeen-year-old niece had been living with a friend in February 1996 when she was reacquainted with Petitioner, her adoptive uncle, and began to spend two to three days a week with him.  State Court R., May 27, 1998 Trial Tr., at 7-11.  Petitioner told the niece that he would take care of her, that he would make up for everyone "mistreating" her and "was going to make everything better." State Court R., May 27, 1998 Trial Tr., at 9-12.  In addition, Petitioner was always available to the niece by pager, promised to buy her a car if she finished high school, took her out to eat frequently, paid the bills at the house where the niece lived with his wife, ex-wife and their children, and made her feel financially secure.  *Id.* at  9-13, 23, 39.  The niece told the investigating detective during an interview that between February and June 1996, she was interested in a paternal relationship with Petitioner.  *Id.* at 18.  In late June 1996, the niece thought she was starting to develop romantic feelings for Petitioner.  *Id.* at 21-23.  However, she

was uncomfortable when Petitioner engaged in sexual contact with her and took photographs of her in his office that summer. *Id.* at 23-28.

The evidence of the tracking records from Petitioner's community corrections center corroborated the niece's testimony about the places she and Petitioner frequented together. Again, although the tracking records may have suggested to the jury that Petitioner was in custody, the Court cannot find, in light of the undisputed evidence that Petitioner committed the unlawful acts charged, that this information fatally infected the trial so as to deny Petitioner due process. Whether Petitioner was in custody at the time of trial had no bearing on the contested issue of whether Petitioner was in a "position of trust" at the time the sexual contact occurred. The Colorado Court of Appeals' determination that Petitioner was not unduly prejudiced by the admission of the evidence was not contrary to, or an unreasonable application of, federal due process law, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Petitioner is not entitled to federal habeas relief as to his fourth claim. Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 2] is denied and this case is dismissed with prejudice. It is

FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED January 31, 2011.

BY THE COURT:
 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge